IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH HART | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-1471-G |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Keith Hart, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of the aggravated robbery of Linda Martinez, an employee of EZ Money Payday Loans, and sentenced him to 23 years confinement. His conviction and sentence were affirmed on direct appeal. *Hart v. State*, No. 05-06-00029-CR, 2006 WL 3114394 (Tex. App.-- Dallas, Nov. 3, 2006, no pet.). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Hart*, No. 67,878-01 (Tex. Crim. App. Aug. 1, 2007). Petitioner then filed this action in federal district court.

II.

Petitioner raises three issues in four grounds for relief. Succinctly stated, petitioner contends that: (1) the evidence was insufficient to support his conviction; (2) his confession was involuntary; and (3) he received ineffective assistance of counsel.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). Federal habeas courts review questions of law and mixed questions of law and fact under section 2254(d)(1). Pure questions of fact are reviewed under section 2254(d)(2). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S.Ct. 194 (2001).

A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1523. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001),

*quoting Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

In two grounds for relief, petitioner contends that the evidence was legally and factually insufficient to support his conviction because: (1) the testimony of Karen McClinton was inadmissible under Texas law; and (2) the testimony of Tamija Turner was inconsistent with statements given to the police.

1.

Federal habeas review of a legal sufficiency claim is extremely limited. A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 102 (1992). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 99 S.Ct. at 2789; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir.), *cert. denied*, 111 S.Ct. 265 (1990).

Petitioner does not allege that the state failed to prove any particular element of the offense of aggravated robbery. Instead, he appears to argue that his sentence was the result of improper character witness testimony. At the punishment phase of the trial, Karen McClinton, the assistant manager of a Burger King restaurant, testified that petitioner robbed her restaurant at gunpoint on January 19, 2004--five days before the EZ Money robbery. (*See* SF-IV at 45-51). Although

petitioner believes that McClinton's testimony was inadmissible under Texas law,[1] "there is no constitutional prohibition on the introduction at a trial's punishment phase of evidence showing that the defendant has engaged in extraneous, unadjudicated, criminal conduct." *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1434 (2006). Unless petitioner can show that the improper admission of prejudicial evidence violated his right to a fair trial, he is not entitled to federal habeas relief. *See Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1437 (2000). Petitioner has failed to meet this heavy burden. Even after hearing evidence linking petitioner to another armed robbery, the jury rejected the prosecutor's plea for life imprisonment and sentenced petitioner to only 23 years in prison. In light of this sentence, the court cannot say that the admission of McClinton's testimony was unduly prejudicial. This ground for relief should be overruled.

2.

Petitioner further contends that the evidence was insufficient to support this conviction because the testimony of Tamija Turner, an eyewitness who testified at the guilt-innocence phase of the trial, was inconsistent with statements given to the police. This challenge to the factual sufficiency of the evidence is not cognizable on federal habeas review.

---

[1] Under Texas law:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2007). Although the court need not decide this issue, it is likely that McClinton's testimony was admissible under this statute.

Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson*. *Id.* Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *quoting Clewis*, 922 S.W.2d at 129. The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority. *Id.* at *14 (citing cases). There is no corresponding right of review under the United States Constitution. *Id.*; *see also Daisy v. Dretke*, No. 3-04-CV-2015-D, 2004 WL 3167743 at *2 (N.D. Tex. Dec. 21, 2004) (citing cases).

C.

Next, petitioner contends that his confession was involuntary because he gave an oral statement to the police while under the influence of mace and the statement was not electronically recorded.

1.

The due process clause of the Fourteenth Amendment prohibits the use of involuntary confessions resulting from coercive police conduct. *See Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1613 (1993), *citing Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). In order to establish that his confession was involuntary, petitioner must demonstrate that it resulted from coercive police conduct and establish a link between the

coercive conduct and the confession. *See United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004), citing *Colorado v. Connelly*, 479 U.S. 157, 163-65, 107 S.Ct. 515, 519-21, 93 L.Ed.2d 473 (1986). A confession is voluntary if, under the totality of the circumstances, it is the product of free and rational choice. *See United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir.), *cert. denied*, 117 S.Ct. 264 (1996).

2.

The facts surrounding petitioner's confession were fully developed at a hearing held outside the presence of the jury. At the hearing, Dallas Police Detective Dennis Craig testified that he interviewed petitioner following his arrest on October 20, 2004. (SF-III at 96-97). Craig confirmed that petitioner had been maced, but appeared to be in good physical condition. (*Id.* at 97). After advising petitioner of his *Miranda*[2] rights and allowing him to rest for 30 minutes, Craig informed petitioner that he had been arrested for the robbery of a Burger King restaurant and the robbery of an EZ Money store. (*Id.* at 97-100). Petitioner then gave the following oral statement detailing his involvement in the EZ Money robbery, which Craig reduced to writing:

> I'm giving this statement to Detective Craig. My name is Keith Ladon Hart and my momma calls me "Keke." On January of 2004 during the daylight hours I met up with Leonard Thomas and Kieron Busby and we got into a car with a clucker who was driving. We drove around a while and we got something to eat at McDonald's. Kieron wanted to go hit a lick because he needed money for his family. I told Kieron I would look out for him. If Kieron or Leonard had a gun I did not see it. We were riding around and just picked it. I'm not down for that kind of s--t. We all went in together and I just stood by the door and watched out. They said "let's go, let's go," and we ran out. Later on when we were in the car I had some checks in my hand. I can't do nothing with those checks, I was gonna throw them away. That same day Eddie Crawford who stayed in Dixon came to me. He said give me one of those checks I know what to do with it. I heard Eddie had been in trouble for that before. About two weeks later Eddie came to

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

> me & said there's something wrong with those checks. I said whatever
> happened with those checks is on you. I didn't get any cash from
> Kieron or Leonard. Since the day Eddie or "Part Three" told me about
> those checks I've been feeling bad about what happened.

(*Id.* at 100-02; *see also* St. Exh. 11). Craig testified that petitioner reviewed and corrected the two-page written statement. (SF-III at 103). After petitioner initialed his corrections, Craig read the entire statement aloud, including the *Miranda* warnings at the top of the first page. (*Id.*). Petitioner then signed the written statement in the presence of a civilian witness. (*Id.* at 103-04). At no time did petitioner tell Craig that he was physically unable to discuss the EZ Money robbery or sign the written statement. (*Id.* at 111).

Petitioner also testified at the hearing. According to petitioner, the arresting officers kicked him in the face and sprayed mace in his eyes before taking him to jail. (*Id.* at 113). Petitioner said that his eyes still hurt when he was interviewed by Craig. (*Id.* at 114). Although petitioner admitted talking to Craig, he said they only discussed his family and not the EZ Money robbery. (*Id.* at 115, 118). Petitioner also claimed that the written statement was never read to him and that he only signed the statement because Craig told him "this is what we just talked about." (*Id.* at 115, 117).

At the conclusion of the hearing, the trial court ruled that petitioner's statement was voluntary. (*Id.* at 127-28). Petitioner has failed to establish that the state court's resolution of this mixed question of fact and law is unreasonable in light of the conflicting evidence presented at the hearing. *See Barnes v. Johnson*, 160 F.3d 218, 225 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1768 (1999) (denying habeas relief based on state court finding that police actions were not coercive and did not render confession involuntary); *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir.), *cert. denied*, 118 S.Ct. 1793 (1998) (same); *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1567 (1998) (same). Nor were the police required to electronically record petitioner's

statement. The statute cited by petitioner, Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1),[3] applies only to *oral* statements. Here, the state introduced petitioner's *written* statement into evidence. This ground for relief is without merit and should be overruled.

D.

Finally, petitioner contends that he received ineffective assistance of counsel because his attorney failed to impeach the testimony of various witnesses with prior inconsistent statements and did not object to McClinton's improper character testimony.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in

---

[3] Article 38.22, § 3(a)(1) provides:

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (1)    an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;
>
> (2)    prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;
>
> (3)    the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;
>
> (4)    all voices on the recording are identified; and
>
> (5)    not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1) (Vernon 2005).

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

Petitioner complains that his attorney failed to impeach Tamija Turner, Edward Crawford, and Tashundra Waters with prior inconsistent statements. The court initially observes that petitioner has failed to identify any prior statement made by Turner. Rather, he points to excerpts of two prosecution reports summarizing an interview with Linda Martinez, the robbery victim. In one report, Martinez told the police that Turner, who worked at a pawn shop next door to the EZ Money store, "looked out" the front door of his store as petitioner and two accomplices ran from the scene. (*See* Pet. Mem. Br., Exh. 1). The other report states that Turner "walked out" the front door of his store and watched the suspects commit the offense. (*Id.*, Exh. 2). Even if the two reports are inconsistent, there was no basis for counsel to impeach Turner with statements made by another witness.[4]

Edward Crawford gave a voluntary statement to the police admitting that he drove petitioner to a Bank of America to cash two checks. One check belonged to Crawford. The other check was

---

[4] The Texas Rules of Evidence provide that a witness may be impeached with "a prior inconsistent statement made by the witness." TEX. R. EVID. 613(a). The rules do not allow for impeachment of a witness by a statement made by another witness.

made out to "Terri Rashun Lightner," a customer of EZ Money. (*See* SF-III at 80-81, 89-90 & St. Exh. 8). Although Crawford's sister, Tashundra Waters, worked at the bank, Crawford said Waters was not at work when they cashed the checks. (*Id.*, Exh. 5). In her voluntary statement, Waters told the police that Crawford came by the bank sometime in January "and cashed a check under my account." (*Id.*, Exh. 6). It is not clear that these two statements are inconsistent or contradictory. Moreover, even if defense counsel could have impeached Crawford with one or both statements, petitioner was not prejudiced by his failure to do so. Tamija Turner, an eyewitness to the robbery, identified petitioner in a photo lineup and in open court as one of three men who robbed the EZ Money store. (*See* SF-III at 68-69). That Crawford may have perjured himself to cover-up his involvement in the robbery had no bearing on the outcome of petitioner's trial.

Petitioner also criticizes his attorney for failing to object to McClinton's testimony about the Burger King robbery. The court previously determined that the admission of this evidence at the punishment phase of the trial was not prejudicial. Without a showing of prejudice, petitioner cannot prevail on his ineffective assistance of counsel claim.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 9, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE